STATE *vs.* WALTER D. BUCHANAN.

JUNE 16, 1911.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1) *Motor Vehicles. Speed Limit. "Closely Built Up." Criminal Complaints.*

Criminal complaint under Gen. Laws, 1909, cap. 86, § 11, charged defendant with operating a motor vehicle "on Broadway, a public highway in said Pawtucket, where the territory contiguous thereto is closely built up, at a rate of speed greater than fifteen miles per hour.":—

*Held,* that the complaint contained all the information necessary to notify defendant of the nature and cause of the accusation, as he was presumed to know the law, including the definitions therein of "closely built up."

(2) *Motor Vehicles. "Territory."*

*Held,* further, that under Gen. Laws, 1909, cap. 86, of motor vehicles '"territory" is considered with reference to its location as being either within or without the limits of a city, village or town and territory within a city, village or town as being devoted or not devoted to business. The third definition in said section including the provisos has reference to territory outside the limits of a city or village, and is inapplicable to the complaint which charges an offence committed within the limits of a city.

(3) *Specification of Place of Offence.*

*Held,* further that it was not necessary that the complaint should furnish information in addition to the allegation of place, therein set forth, to enable defendant to ascertain in which section of the city, either business or residential, he was charged with exceeding the statutory speed limit. This he could determine for himself by inspection, or a bill of particulars might be obtained.

(4) *Evidence. Motor Vehicles.*

In a criminal complaint charging a violation of the speed limit, evidence as to what police departments used the Jones Speedometer offered for the purpose of proving the accuracy of the speedometer belonging to defendant, was properly excluded.

(5) *Evidence. Speed Limit. Reasonable and Safe Operation of Motor Vehicle.*

In a criminal complaint charging a violation of the speed limit as the statute prohibits the operating of motor vehicles on any public highway, where the territory is closely built up, in any event, at more than fifteen miles per hour, evidence as to whether defendant was operating his machine in a reasonable and safe manner, was properly excluded.

CRIMINAL COMPLAINT. Heard on exceptions of defendant and overruled.

DUBOIS, C. J. _This is a criminal complaint brought in the District Court of the Tenth Judicial District, under Gen. Laws, 1909, cap. 86, § 11, charging that on September 2, 1910, at Pawtucket, the defendant "Did operate a motor vehicle on Broadway, a public highway in said Pawtucket, where the territory contiguous thereto is closely built up, at a rate of speed greater than fifteen miles per hour against the statute and the peace and dignity of the state." Upon arraignment in said district court the defendant pleaded not guilty and was found guilty and sentenced and therefrom appealed to the Superior Court, wherein he filed the following motion to quash: "The defendant comes and moves to quash the above entitled complaint for the reason that said complaint does not specify in what manner the highway therein described was closely built up." The motion was heard and denied by a justice of said Superior Court, and to this denial the defendant excepted. The defendant was thereupon arraigned and pleaded not guilty and the jury trial was had and resulted in a verdict of guilty. The defendant duly filed his motion for a new trial in said Superior Court based upon the grounds that the verdict is against the law and the evidence; that there is from the evidence a reasonable doubt as to the guilt of said defendant, and for newly discovered evidence. The motion was heard and denied by the justice who presided at the trial and to this ruling the defendant took exception. The defendant duly filed and prosecuted to this court his bill of exceptions, based upon the following grounds:

"(1) To the ruling of said justice at the trial of said case in denying his motion to quash the complaint, to which exception was duly taken, as shown upon page two of the transcript of testimony.

"(2) To the ruling of said Justice denying the defendant's motion to direct a verdict for the defendant at the close of the

complainant's testimony, to which exception was duly taken, as shown upon page 37 of said transcript of testimony.

"(3)  To the ruling of said Justice in refusing to admit in evidence testimony as to what police departments use the Jones Speedometer in their official testing, to which exception was duly taken, as shown upon page 66 of said transcript of testimony.

"(4)  To the ruling of said Justice in refusing to admit in evidence whether or not the defendant was operating his machine going down Broadway in a reasonable and safe manner, to which exception was duly taken, as shown upon page 78 of said transcript.

"(5)  To the ruling of said Justice denying the defendant's motion to direct a verdict for the defendant at the close of the defendant's testimony, to which exception was duly taken, as shown upon page 93 of said transcript.

"(6)  To the refusal of said Justice to charge the jury in accordance with the requests duly presented by said defendant, to which exception was duly taken, as shown upon pages 95 and 96 of said testimony.

"(7)  To the decision of said Justice denying the defendant's motion for a new trial, to which exception was duly taken, which motion was based upon the following grounds.  (1)  The verdict is against the law.  (2)  The verdict is against the evidence and the weight thereof.  (3)  The verdict is against the law and the evidence and the weight thereof.  (4)  That there is from the evidence a reasonable doubt as to the guilt of said defendant.  (5)  The defendant has discovered new and material evidence which he had not discovered at the time of the trial of said cause, and which he could not have discovered at said time by the exercise of reasonable care.

"And the defendant avers that all of said rulings constitute error prejudicial to him and that said errors entitle him to a new trial or to be discharged;" and the case is now before this court for the determination of the validity of the foregoing exceptions.

The section of the statute under which the complaint in

question was brought reads as follows: "Sec. 11. No person shall operate or cause to be operated a motor vehicle on the public highways of this state recklessly or at a rate of speed greater than is reasonable and proper, having regard to the width, traffic, and use of the highway, or so as to endanger property or the life or limb of any person, or in any event on any public highway, where the territory contiguous thereto is closely built up, at a rate of speed greater than fifteen miles per hour, or elsewhere at a rate of speed greater than twenty-five miles per hour, subject, however, to all other provisions of this section and of this chapter, relative to the operation of such vehicles."

Section 1 of Cap. 1592, Public Laws, passed at the January Session, 1908 (which became Gen. Laws, 1909, cap. 86, § 1), was amended by cap. 454, § 1, Pub. Laws, passed May 7, 1909; the portion thereof defining "closely built up" reads as follows: "(8) 'closely built up' shall mean (a) the territory of a city, village, or town contiguous to a public highway which is at that point built up with structures devoted to business, (b) the territory of a city, village, or town contiguous to a public highway not devoted to business, where for not less than one-quarter of a mile the dwelling-houses on such highway average less than one hundred feet apart, and also (c) the territory outside of a city or village contiguous to a public highway within a distance of one-half mile from any post-office: *Provided,* that for a distance of at least one-quarter of a mile within such limits the dwelling-houses on such highway average less than one hundred feet apart; and *provided, further,* that the city and town officers having charge of such highway shall have placed conspicuously thereon signs, of sufficient size to be easily readable by a person using the highway, bearing the words, 'slow down to fifteen miles,' and also an arrow pointing in the direction where the speed is to be reduced."

(1)   The motion to quash was properly denied. The complaint contains all the information necessary to notify the defendant of the nature and cause of the accusation against him. He is presumed to know the law, including the foregoing definitions

of "closely built up." Therein the legislative intent is so perfectly apparent that he who rides may read, and reading, understand.

(2)   Under the foregoing statute "territory" is considered with reference to its location as being either within or without the limits of a city, village or town; and territory within a city, village or town as being devoted or not devoted to business. Under the present complaint the defendant is clearly charged with an offence alleged to have been committed within the limits of the City of Pawtucket, and that being the case the third definition of "closely built up" is inapplicable to the present consideration. The third definition, including the provisos, clearly has reference to territory outside the limits of a city or village. Therefore it is unnecessary to allege and prove the existence of signs and arrows within the city limits, where none are required by the terms of the statute. Any motor traveller having ordinary powers of observation can tell when he has passed the suburbs of a city or town and has arrived within the compact portion thereof. In such circumstances he should no longer seek for a sign, but should pay attention to the closeness of the structures on the territory contiguous to the highway whereon he is travelling. If they come within the statutory definition of "closely built up," whether it be in the business or residential portion of the municipality, he must reduce the speed of the motor vehicle under his control to a rate not exceeding fifteen miles per

(3) hour or take the consequences of his disobedience. Nor is it essential that the complaint should furnish information in addition to the allegation of place, therein set forth, to enable the defendant to ascertain in which section of said city, either business or residential, he is charged with exceeding the statutory speed limit. All he is obliged to do is to go to Broadway and upon inspection, determine for himself. If it so happened, which does not appear to be the fact in this case, that Broadway included both residential and business sections, so that he was unable to come to a correct conclusion upon a view of the premises, a motion for a bill of particulars to confine the charge

within a limited area on the highway would undoubtedly be entertained and granted. An examination of the plat of Broadway introduced in evidence (State's Exhibit A.) shows the territory contiguous thereto to be largely, if not wholly, residential.

The second exception relates to the refusal of the court to direct a verdict for the defendant at the close of the complainant's testimony on the ground, as appears by the transcript, that the State has not shown that signs were placed on the highway, in accordance with the provisions of Gen. Laws, 1909, cap. 86, § 1. This exception must be overruled for the reasons above stated.

(4)   The third exception is based upon the refusal of the justice at the trial to permit William H. Johnson, foreman for the Jones' Speedometer, the New England Branch, a witness for the defendant, to answer the following question: "30 Q. Do you know what police departments use the Jones' Speedometer in their official testing?" The transcript also discloses the following: "Mr. Cross: I object. What difference does it make? Mr. Tillinghast: To show they are accurate. To show their standing. Mr. Cross: I object. The Court: Objection sustained. Exception taken by Mr. Tillinghast." The question asked, being susceptible of a categorical answer in the affirmative or negative, was unobjectionable, but with the explanation offered by the interrogating counsel that it was intended to elicit information tending to show the accuracy and standing of that make of speedometer, it was objectionable and properly excluded. The fact, if it is a fact, that very many of the police departments in the United States and elsewhere made use of this particular speedometer in their official testing, would only prove the faith of the several departments in its accuracy or the efficiency of the salesmen employed in selling the speedometer. This was not a proper way to prove the fact of the accuracy of this kind of speedometer in general, nor of the one belonging to the defendant in particular.

The fourth exception relates to a ruling of the trial justice in refusing to permit the defendant to answer the following

question, asked of him by his own counsel in direct examination: "55 Q. And whether or not on this day in question you were operating your machine, going down Broadway, in a reasonable and safe manner?" The ruling was perfectly proper. The statute prohibits persons from operating motor vehicles *in any event* on any public highway, where the territory is closely built up, at a rate of speed greater than fifteen miles per hour. This is the standard by which all must be measured. Any excess of speed, however slight, constitutes an infraction of the statute, notwithstanding the fact that care was exercised by the operator to have his machine under perfect control, and that he was operating the same safely and in a manner that, except for the prohibition of the statute, would have been reasonable. It is true that the statute also prohibits all persons from operating motor vehicles recklessly or at a rate of speed greater than is reasonable and proper, having regard to the width, traffic and use of the highway, or so as to endanger property or the life or limb of any person. Of course there are times when the operators of motor vehicles must bring the same to a full stop, when any rate of speed whatever would be criminal carelessness. There are times when it would not be safe to proceed at the rate of one mile an hour, for example: in a crowded street with a procession of children passing. So there might be times when a person would be liable for breach of the statute when he was proceeding along a public highway at a rate of speed much less than fifteen miles per hour. But if a person going at a rate of speed less than fifteen miles per hour should be arrested upon a complaint charging him with operating a motor vehicle recklessly, or at a rate of speed greater than was reasonable and proper under the circumstances or so as to endanger the life or limb of any person, then and in such case, the question of his care, reasonableness and propriety in operating the machine would become of vital importance to the decision of the case. In the case at bar no such question arises.

The fifth exception was taken to the refusal of the justice presiding to direct a verdict for the defendant at the close of the testimony. The testimony as to the rate of speed at which

the defendant was operating his machine at the time and place complained of was conflicting and was a proper subject for decision by the jury. The motion was properly denied and the exception is without merit.

The sixth exception was taken to the refusal of the trial judge to charge the jury in accordance with the following requests: "Before the jury can find the defendant guilty they must find (1) that he intentionally operated the car recklessly; (2) that he intentionally operated the car at a rate of speed greater than is reasonable and proper having regard to the width, traffic and use of the particular highway or (3) that he intentionally operated the car so as to endanger the property, the life, or the limb of any person in the particular streets traveled over.

"That in operating the car at from 15 to 25 miles an hour, is not sufficient, under the proof in this case to convict the defendant, and that unless they find the car was driven at more than 25 miles an hour, their verdict must be in favor of the defendant." The charges were properly refused for the reasons already given and the exception has no validity.

The seventh exception was taken to the decision of the trial justice denying the defendant's motion for a new trial upon the grounds that the verdict is against the law and the evidence and that the defendant has discovered new and material evidence.

There has been no suggestion either in the brief or argument of the defendant concerning the manner in which the jury has disregarded the law as laid down to them by the justice of the Superior Court who presided at the trial of the case at bar and we have been unable to discover any such violation. We cannot say from a bare inspection of the transcript that the verdict is against the evidence or the weight thereof or that there is any reasonable doubt of the guilt of the accused. The testimony came from the mouths of living witnesses and the weight of evidence proceeding from their testimony was to be ascertained by the jury. There is nothing to indicate that the jurors were prejudiced against the defendant or in favor of the witnesses for the prosecution, or that their verdict was the result of any improper motive. Moreover, it has been approved

by the justice who heard the witnesses upon the stand; a verdict so approved will not be set aside except for the best of reasons. See *State* v. *Badnelley,* 32 R. I. 378. The newly discovered evidence consists of the opinion of a civil engineer who has made affidavit that on the day in question, about noon-time, he was in a trolley car on Broadway, in Pawtucket, and noticed a touring car going down Broadway, being driven by a middle aged man with a younger man sitting on the seat with him, and a party of ladies in the tonneau, that the car and touring car were going towards Pawtucket. That during the entire trip the trolley car went, in his opinion, not to exceed twelve miles an hour, and that in his opinion at no time while said touring car was proceeding down Broadway towards Main street square did it exceed the speed of twelve or fourteen miles per hour. That he afterwards noticed that the same car was being "held up" by Officer Wadsworth. Even admitting that the identity of the defendant with the person in the car held up by the officer is sufficiently established, the evidence of the witness would be merely cumulative and that of his opinion. In the trial of the case the defendant and his chauffeur relied upon the accuracy of the speedometer on the car and were able to testify therefrom that the speed of the car did not exceed fourteen and one-half miles per hour on Broadway in the city of Pawtucket. It is apparent that the opinion of the new witness would not be likely to change the result.

The motion for a new trial was properly denied, and the defendant's exception to such denial must be overruled.

All of the exceptions are therefore overruled, and the case is remitted to the Superior Court for sentence.

*William B. Greenough, Attorney-General, Harry P. Cross, Second Assistant Attorney-General,* for State.

*John A. Tillinghast,* for defendant. *Elmer E. Cooley,* of counsel.